UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| GLYNIS MECHELLE ROARK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:10-CV-67-JMH |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 11, 12].[1] Plaintiff has filed a Response to the Commissioner's Motion for Summary Judgment [Record No. 13]. The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Claimant Roark filed an application on November 20, 2007, alleging disability beginning on October 26, 2007.[2] Her claim was

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

[2] Plaintiff also filed a prior application for Supplemental Security Income on March 15, 2005. That application was denied and

1

denied on April 22, 2008, and, upon reconsideration, on July 25, 2008. Claimant requested a hearing on September 5, 2008, and that hearing was conducted on June 2, 2009. Administrative Law Judge ("ALJ") Andrew G. Sloss issued a decision on August 14, 2009, denying her application upon a finding that she was under a disability as defined in the Social Security Act. She timely requested a review of that decision, which was denied on January 28, 2010.

Plaintiff now appeals from the Commissioner's denial of this claim for Supplemental Security Income. This court has jurisdiction under §§ 205(g), 1631(C)(3) of the Social Security Act, 42 U.S.C. §§ 405(g)(c)(3), 1383(c)(3).

**B.   Factual Background**

Plaintiff was 37 years old at the time of the current ALJ's decision on August 14, 2009. She has an 11th grade education and, as found by the ALJ, has no past relevant work experience. Plaintiff alleged disability commencing October 26, 2007, due to heart palpitations, Meniere's disease, and "severe depression." However, after review of the medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff was not disabled.

The ALJ found Plaintiff had severe impairments consisting of

---

ultimately the subject of an appeal to this Court. On January 11, 2010, the Court issued an Order and Judgment affirming the Commissioner's decision with respect to that application. *See Roark v. Soc. Sec. Admin.*, No. 6:08-cv-303-GFVT, R. 7 and 16.

Meniere's disease, heart palpitations, a cognitive disorder, NOS, and an adjustment disorder with depression and anxiety. The ALJ found that those impairments, while "severe," did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.

Considering all the evidence of record, the ALJ determined that Plaintiff's impairments limited her to the performance of a reduce range of sedentary work activity. Specifically, the ALJ determined that Plaintiff had the residual functional capacity to:

> [P]erform sedentary work except she requires work allowing for a sit/stand option at will, and cannot perform work requiring any climbing of ladders, ropes, or scaffolds; work in loud noisy environments; work requiring the operation of a motor vehicle. In addition, the claimant is precluded from work exposing her to hazardous machinery and she can perform no jobs requiring balancing. The claimant retains the ability to deal with supervisors and coworkers but is precluded from work involving interaction with the public and has a seriously limited but not precluded ability to deal with work stresses.

Because Plaintiff had no past relevant work, the ALJ considered whether there was other work in the economy Plaintiff could perform, considering her age, education, and residual functional capacity, citing 20 C.F.R. § 416.920(g). Relying on hearing testimony from a vocational expert, the ALJ found that there were other sedentary jobs existing in significant numbers in the economy that Plaintiff could have performed, including jobs as hand packer, production worker, inspector, and material mover.

Because Plaintiff could perform work existing in the economy despite her severe impairments, she was found "not disabled," citing 20 C.F.R. § 416.920(g).

**II. OVERVIEW OF THE PROCESS**

The ALJ, in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Servs*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process

4

to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

**III. STANDARD OF REVIEW**

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**IV. ANALYSIS**

As an initial matter, Claimant argues that the ALJ erred in determining that she did not have an impairment or combination of impairments that met or equaled the listed impairments of 20 C.F.R. pt. 404, subpt. P, app. 1, because the evidence of record demonstrates that she suffers from a mental disorder, depression,

5

which meets the requirements of 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00 and 12.06 for "Anxiety Related Disorders." To this end, Plaintiff avers – without citation to the administrative record – that she has medically documented generalized persistent anxiety accompanied by autonomic hyperactivity, apprehensive expectation, and vigilance and scanning, which results in marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, and pace. She states – again, without citation to the administrative record – that she "has been diagnosed with depression both by her treating physician and the Administration's consulting physicians" and that her "depression has lasted for a continuous period of at least 12 months and will continue to limit her in working." [Pl. Mot. for Summ. Judg. at 7.] This is not, however, enough to demonstrate that she suffers from a listed impairment or has the equivalent of the listed impairment, without more.

When a claimant alleges that her impairment meets or equals a listed impairment, she must present specific medical findings that satisfy all of the criteria of the particular listing. See 20 C.F.R. §§ 416.920(a)(4)(iii), (d), 416.925, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In this case, Plaintiff has not identified or presented any specific medical findings in the

administrative record to demonstrate that her condition met or equaled that outlined in Listing 12.06. Plaintiff, not the Commissioner and not this Court, bears the burden of producing evidence to support her case. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c); *Casey v. Secretary of Health and Human Service*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, her argument fails with respect to her assertion that the ALJ erred when he determined that she did not have an impairment or combination of impairments that met or equaled the listed impairments of 20 C.F.R. pt. 404, subpt. P, app. 1.

Claimant next argues that the residual functional capacity assigned by the ALJ is not supported by substantial evidence because the ALJ failed to properly evaluate her subjective complaints of disabling symptoms from Meniere's disease, anxiety, and other mental problems when he characterized her as suffering from "occasional" nausea and tinnitus when, in fact, Plaintiff testified that the ringing in her ears is "always there. It never goes away." [AR at 15.] Plaintiff also argues that the ALJ failed to properly assess the limitations and restrictions that she experiences with respect to her activities of daily living because he wrote that "[t]he claimant is able to care for herself and her personal needs, perform some household chores, shop and perform routine tasks." Without citation to the record, she argues that the activities listed by the ALJ which she is capable of performing

7

are not strenuous and are not done consistently or on a routine basis. She argues, as well, that the ALJ did not consider the caution that she must use in the simplest activities due to the disabling effects of Meniere's disease. In support of this last statement, she argues that "she has to hold on to the walls to even walk around her house and that she stumbles often." Again, without citation to the record, she argues that it is meaningful that "she cannot be left alone and [is] unable to carry out routine ambulatory activities, such as shopping, banking, climb[ing] a few steps at a reasonable pace with the use of a single hand rail."

Certainly, in the hearing before the ALJ, Plaintiff testified that she is "always off balance" and "always running into things" due to Meniere's disease and that, during a "severe attack" she is "completely incapacitated" and must "lay totally still, [her] eyes closed, and that can last sometimes for three days." [AR at 15.] She reported experiencing the attacks two times a month, more or less. She described the ringing in her ears during the attacks, as they become more severe when she does not rest sufficiently during the course of the day, as "unbearable . . . . like jet engines going off in [her] ear," during which time she "avoid[s] everyone" and "can't be around people." [AR at 25.] She also testified that while she goes shopping for groceries, she only goes with her mother, who brings the groceries into the house for her. She further explained that, to arrive at the room in which the hearing

8

took place, she held onto a railing and, then, the wall so that she would not fall and that she must do the same thing in her house. While she can wash dishes or clothes, she must take frequent breaks while doing those activities to accommodate her condition. Her family relies largely on paper plates, presumably so there are no dishes to wash. She does not do her yard work, nor can she read or watch television without experiencing dizziness as a result of her condition.

The ALJ determined that her medically determinable impairments could be expected to cause the symptoms which she now claims that he failed to account for in developing her RFC, dizziness and tinnitus. However, he ultimately determined that Plaintiff was:

> not credible in that her testimony [that she is severely limited by Meniere's disease and that this condition has gotten progressively worse since diagnosis] is directly contradicted by the objective medical evidence of record, which indicates that her Meniere's disease is controlled by medications, and that she complained of no dizziness or syncope since 2007 . . .

[AR at 79-80.] Having carefully considered the arguments set forth in the briefs, the evidence of record, and recognizing the deference due to the ALJ with respect to credibility determinations, the Court concludes that the ALJ's credibility determination is supported by substantial evidence.

Once the ALJ determines that the medical condition could reasonably be expected to produce the alleged symptoms, the

9

intensity and persistence of the symptoms must still be evaluated based on the available evidence. *See* 20 C.F.R. 404.1520(c)(1)(1). Any symptom-related restriction will be taken into account to the extent it is consistent with the objective evidence, and other evidence in the record. *See* 20 C.F.R. 404.1520(c). One must consider "whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain" or symptoms. *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir.1990) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986)). However, it is the demonstrated functional limitations imposed by a condition in a particular individual, not the mere diagnosis, that determine disability. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). A diagnosis, without more, says nothing about the severity of a condition. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

To the extent that Plaintiff avers that the ALJ improperly discounted the credibility of her testimony that she had severe and incapacitating heart palpitations, the Court concludes that his decision is due weight and deference for his explanation is well supported by the evidence in the administrative record. As pointed out by Defendant, while treatment records reflect complaints of occasional palpitations secondary to pre-ventricular contractions (PVC), Plaintiff's cardiac status was always stable, and she denied

10

chest pain, dizziness, shortness of breath, and syncope. [AR 275, 385-87.] The ALJ emphasized that a 24-hour holter monitor was prescribed in July 2008 to document her palpitations, but no symptoms were recorded, which is supported by the evidence of record. [AR 80, 385-86.] Given this minimal medical record, the ALJ appropriately rejected Plaintiff's allegations of disabling palpitations. [AR 80.]

Further, the ALJ evaluated the medical record and acknowledged Plaintiff's testimony that she experienced nausea and dizziness, as well as tinnitus, which symptoms are reasonably expected to be caused by Meniere's disease. He concluded, however, that her subjective assessment that she suffered from these conditions constantly was directly contradicted by the objective medical evidence of record. He specifically pointed to the fact that since 2007 she had not complained of dizziness or syncope when seeking care from her medical providers. [AR 79.] In fact, she did complain of "some episodes of dizziness" during a visit to Dr. Srini R. Appakondu on April 1, 2009, and during at least two visits to her therapist during 2007, but she denied problems with dizziness when seen at the Appalachian Heart Center at other times from 2007 through 2008 during follow-up for issues related to heart palpitations, hypertension, and Meniere's disease [AR 276-77, 386-89, 464-66], directly contradicting her assertion that she always suffered from vertigo.

11

Perhaps most significantly, no treating or examining medical source indicated that Plaintiff was completely disabled or that she had functional limitations from her physical impairments, including dizziness and tinnitus, that were greater than those assessed by the ALJ. In fact, the RFC adopted by the ALJ meets with the restrictions proposed by one of her treating physicians, Dr. Samir Guindi, in 2005, including an inability to stand/walk for more than two hours in an eight hour day and only a half hour without interruption, no climbing, balancing, or stopping, and only occasional crouching, kneeling, crawling, reaching, handling, pushing/pulling, or hearing, as well as environmental restrictions including no work at heights, with moving machinery, at temperature extremes, or where exposed to noise or vibration.

Ultimately, substantial evidence supports the ALJ's RFC determination. Plaintiff had the burden to provide evidence that her condition caused disabling limitations. See 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(I); 20 C.F.R. §§ 416.912(a), 416.929(a). She failed to carry that burden because her testimony was, in the eyes of the ALJ, undermined by other evidence of record. The agency decision will be affirmed.

V.   **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 12] shall be, and the same hereby is, **GRANTED.**

(2) That the plaintiff's motion for summary judgment [Record No. 11] shall be, and the same hereby is, **DENIED.**

This the 30th day of March, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge